A11A1897. IN THE INTEREST OF T. B. W., a child.

(719 SE2d 589)

ELLINGTON, Judge.

The father of 14-month-old T. B. W. appeals from an order of the Juvenile Court of Upson County that found T. B. W. to be deprived and that approved a request from the Department of Family and Children Services ("the Department") to maintain temporary custody of the child with the Department. On appeal, the father contends that the juvenile court erred in finding that the Department made reasonable efforts to "prevent the removal" of T. B. W. from his custody. "Since [the Department] has not shown reasonable efforts," the father argues, the juvenile court's "finding of deprivation was in error." We disagree.

The October 5, 2010 temporary custody and deprivation order from which the father appeals also addressed the issue of paternity and declared that T. B. W. is the legitimate child of the appellant. On that date, the child was already in the custody of the Department pursuant to a July 8, 2010 order[1] finding that the child was deprived based upon the mother's stipulation of "medical neglect." There is no evidence showing that the child had ever lived with her father or that the mother and father had lived together. The child, who was born at her mother's home, suffered brain damage due to a lack of oxygen and "has major medical issues that require constant medical care." In the July 8 deprivation and temporary disposition order, the court directed the appellant, whose status was then that of a putative father, to establish paternity, to obtain psychological counseling, to submit to a drug and alcohol assessment and a criminal background check, to complete parenting classes, to obtain and maintain stable housing and income, to pay child support, and to fully cooperate with the Department. The Court stated that "substantial compliance" with its order "must be accomplished by the putative father before reunification can be achieved." Thereafter, the juvenile court continued the matter until October 5 to address the Department's petition as it applied to the father. Following the October 5 hearing on the Department's deprivation petition concerning the father, the juvenile court specifically found that the Department "made reasonable efforts to preserve and reunify the family prior to the placement of the child in foster care, to prevent or eliminate the need for removal of the child from the home and to make it possible for the

---

[1] Until the father obtained an order declaring that he was the legal father of T. B. W., he lacked standing to challenge the court's previous orders concerning the child. See OCGA § 15-11-96 (i) (3); *In the Interest of D. W.*, 264 Ga. App. 833, 834-835 (1) (592 SE2d 679) (2003); see also *Hall v. Hall*, 222 Ga. 820, 821 (152 SE2d 737) (1966) ("In this State the father of an illegitimate child, unless he legitimates it, has no standing with reference to the child.").

child to return home."

The father does not challenge the juvenile court's findings with respect to the child's status as a deprived child.[2] Rather, the father challenges the court's decision to allow the Department to maintain custody of the child, contending that the Department failed to make reasonable efforts "to prevent the removal of" T. B. W. from her father's custody.

"A court's order removing a child from the child's home shall be based upon a finding by that court that continuation in the home would be contrary to the welfare of the child." OCGA § 15-11-58 (a). That Code section further requires that,

> [i]f the court places custody of the child in the Division of Family and Children Services of the Department of Human Services, the court shall also determine as a finding of fact whether reasonable efforts were made by the Division of Family and Children Services of the Department of Human Services and any other appropriate agencies to preserve and reunify families prior to the placement of a child in the custody of the Department of Human Services, to prevent or eliminate the need for removal of the child from that child's home, and to make it possible for the child to return safely to the child's home.

"In determining reasonable efforts to be made with respect to a child, as described in this subsection, and in making such reasonable efforts, the child's health and safety shall be the paramount concern[.]" OCGA § 15-11-58 (a) (1).

The juvenile court's conclusion that the Department made reasonable efforts to place T. B. W. with her father is supported by evidence showing that a Department caseworker began working with the father in July, even though he had yet to establish his

---

[2] OCGA § 15-11-2 (8) (A) defines a "deprived child" as, inter alia, "a child who . . . [i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals[.]" "The deprivation must be shown to have resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child." (Citation and punctuation omitted.) *In the Interest of R. M.*, 276 Ga. App. 707, 715 (624 SE2d 182) (2005). See also *In the Interest of A. R.*, 287 Ga. App. 334, 335-336 (651 SE2d 467) (2007) (accord). Thus, a child's status as deprived is not defined by or made contingent upon the Department's reunification efforts prior to disposition of the child. Rather the questions of deprivation and of custody or disposition are two separate inquiries. See OCGA § 15-11-55 (a) (*"If* the child is found to be a deprived child, the court may make any of the following orders of disposition best suited to the protection and physical, mental, and moral welfare of the child[.]") (emphasis supplied).

paternity, and that she made efforts to facilitate visitation and involved the father in family "team meetings." The Department prepared a case plan for the father which required psychological evaluations, counseling, and parenting classes in which the father would learn about his child's special medical needs. The Department inspected the father's living quarters, inquired into his employment history, sought a criminal background check, and performed drug screens. The Department's efforts, however, were thwarted by the father. He failed his drug screens, testing positive for marijuana on three occasions. He failed to get a whooping cough vaccine, which was required to safeguard the child's fragile health. He lacked stable housing and remained unemployed, relying on his seriously-ill grandmother's disability benefits and his mother's retirement benefits. He failed to pay child support. He failed to submit information needed for a criminal background check. He had a suspended driver's license and no reliable means of transporting the child to her doctors' appointments.

Based upon the father's failure to meet the Department's requirements for reunification, the juvenile court concluded that it "would be contrary to the welfare of the child" to be placed with the father at that time, "and that removal of the child from the home is in the best interest of the child." The court, however, did not terminate reunification efforts. It entered a "temporary disposition," continuing custody in the Department and directing the Department to "prepare a case plan for reunification with the father." Under the circumstances of this case, the record supports the juvenile court's finding that reasonable efforts were made by the Department to place T. B. W. with her father prior to entering an order continuing the child's temporary custody with the Department. Therefore, the father has shown no error which would require a reversal of the court's order.

*Judgment affirmed. Miller, P. J., and Doyle, J., concur.*

DECIDED NOVEMBER 18, 2011.

*Stephen D. Ott,* for appellant.

*Samuel S. Olens, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Penny Hannah, Assistant Attorney General, Alonzo J. Bentley, Jr.,* for appellee.